IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Eric Lorenzo Grant, | ) | Civil Action No. 8:16-cv-914-BHH-JDA |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Nancy A. Berryhill, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On August 17, 2012, Plaintiff protectively filed an application for DIB, alleging an onset of disability date of November 30, 2010. [R. 163–69.] The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[R. 92–98]. Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on February 5, 2014, ALJ Roseanne P. Gudzan conducted a de novo hearing on Plaintiff's claims. [R. 44–66].

The ALJ issued a decision on June 6, 2014, finding Plaintiff not disabled through the date last insured, June 30, 2006. [R. 20.] At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity after September 2004, and his date last insured was June 30, 2006. [R. 17, Finding 1 and 2.] At Step 2, the ALJ determined that Plaintiff had not had a severe medically determinable impairment through his date last insured of June 30, 2006. [R. 18, Finding 3.] The ALJ noted that if Plaintiff met the definition of statutory blindness, his date last insured would be extended through December 31, 2023. [R. 18.] However, the ALJ found that Plaintiff did not meet the definition of statutory blindness in the Social Security Act ("the Act") and Listing. [R. 19.] Accordingly, the ALJ found that Plaintiff was not disabled based on the application filed on August 17, 2012, through the date last insured on June 30, 2006, because Plaintiff did not have a medically determinable impairment through June 30, 2006. [R. 19–20.]

Plaintiff requested Appeals Council review of the ALJ's decision, and on January 21, 2016, the Council denied his request for review. [R. 1–6.] Plaintiff filed this action for judicial review on March 22, 2016. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends substantial evidence does not support the Commissioner's decision. Specifically, Plaintiff alleges that additional medical evidence he presented to the Appeals Council showed he met Listing 2.03(A) as of August 20, 2012 [doc. 19], which does establish statutory blindness; and the Appeals Council erred by refusing to grant

2

Plaintiff's request for review because, based on the new and material evidence, substantial evidence did not support the ALJ's decision. [Doc. 17 at 5–8.] Plaintiff also alleges remand is appropriate to allow the fact finder to review the new evidence and articulate her findings. [*Id*. at 7; Doc. 19.]

The Commissioner contends that the ALJ properly culled through the evidence of record and found Plaintiff did not meet the statutory definition of blindness and substantial evidence supports the decision. [Doc. 18 at 1–2.] The Commissioner argues that the new evidence presented to the Appeals Council by Dr. Elizabeth Sharpe ("Dr. Sharpe") would not have changed the ALJ's decision because the ALJ reviewed the medical evidence and relied upon the state agency physicians' assessments, and the check box form would not have changed the outcome. [*Id*. at 11–14.] Thus, the Commissioner argues the Appeals Council did not err when substantial evidence supported the ALJ's decision notwithstanding the new evidence, and the decision should be affirmed.

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning

3

mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the

courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v.*

*Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[2]  With remand under sentence

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings.  *See*

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

---

[2]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth
in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the
Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating
a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152,
2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107,
2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.
2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health &
Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme
Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.
*See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply
the more stringent *Borders* inquiry.

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A. *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit,

whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[3] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers

---

[3]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

primarily from an exertional impairment, without significant nonexertional factors.[4]   20

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929,

930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases

involving exertional limitations).   When a claimant suffers from both exertional and

nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.

In such a case, the Commissioner must use a vocational expert to establish the claimant's

ability to perform other work.   20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50

("Because we have found that the grids cannot be relied upon to show conclusively that

claimant is not disabled, when the case is remanded it will be incumbent upon the

[Commissioner] to prove by expert vocational testimony that despite the combination of

exertional and nonexertional impairments, the claimant retains the ability to perform

specific jobs which exist in the national economy.").   The purpose of using a vocational

expert is "to assist the ALJ in determining whether there is work available in the national

economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the

vocational expert's testimony to be relevant, "it must be based upon a consideration of all

other evidence in the record, . . . and it must be in response to proper hypothetical

questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

---

[4]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).   A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the

opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v.*

*Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re

14

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity,

15

severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Evidence Presented to the Appeals Council**

Plaintiff argues the Commissioner's decision should be reversed and remanded because the Appeals Council erred by failing to grant review of the decision based on new and material evidence.  Plaintiff contends the new evidence from Dr. Sharpe was relevant and material in that the ALJ may have changed the outcome of her decision had she known that Plaintiff met Listing 2.03(A).  The Commissioner contends that the Appeals Council was not required to articulate its reason to deny review, and the ALJ's decision was still supported by substantial evidence even in light of Dr. Sharpe's new opinion.  The Court agrees with Plaintiff.

**ALJ's Decision Regarding Statutory Blindness Listing**

Dr. Sharpe completed a form on February 14, 2014, that stated in her medical opinion Plaintiff met the criteria for 2.03 contraction of the visual field in the better eye as of August 20, 2012. [R. 353.] However, on the form Dr. Sharpe did not select box A, B, or C, with respect to 2.03. [*Id*.] On April 30, 2014, Dr. Sharpe again completed a similar form with respect to Plaintiff, and this time 2.03 was checked and box B was checked. [R. 354.]

The ALJ recognized that if Plaintiff met the definition of statutory blindness his date last insured would be extended through December 31, 2023, but he determined that Plaintiff's "medical record fails to establish that he meets the definition of statutory blindness... ." [R. 17.] The ALJ explained,

> Statutory blindness is blindness that is defined in section 216(1)(1) of the Social Security Act. The term "blindness" means central visual acuity of 20/200 or less in the better eye with the use of correcting lens.  An eye which is accompanied

17

by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees shall be considered for purposed in this paragraph as having central visual acuity of 20/200 or less.

Visual disorders are evaluated under Listing 2.00. . . .

. . . Listing 2.03 is met when (A) the widest diameter subtending an angle around the point of fixation no greater than 20 degrees; or (B) an MD of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field; or (C) a visual field efficiency of 20 percent or less, determined by kinetic perimetry.

Listing 2.00(A)(2)(c) specifies that a claimant has statutory blindness only if his visual disorder meets the criteria of 2.02 or 2.03(A). A claimant does not have statutory blindness if his visual disorder medically equals the criteria of 2.02 or 2.03(A) or meets or medically equals the criteria for 2.03(B), 2.03(C), 2.04 (A), or 2.04(B) because a claimant's disability is based on criteria other than those in the statutory definition of blindness.

. . .

Dr. Elizabeth Sharpe, the claimant's opthalmologist, completed a medical source statement dated April 30, 2014, and stated that the claimant's visual impairment met Listing 2.03(B), as of August 20, 2012, with documentation that the claimant had an MD greater than 22 decibels. [R. 354.] . . . Unfortunately, this does not meet the definition of statutory blindness in the Social Security Act and Listing, and the undersigned is unable to extend the claimant's date last insured beyond June 30, 2006. . . .

Pursuant to 20 CFR 404.1527 and Social Security Rulings 96-6p and 96-2p, the undersigned has considered the medical opinions of the claimant's treating physicians, evaluating physicians, and the state agency medical consultants.

The state agency medical consultants found that the claimant's visual impairment met Listing 2.03(B), and therefore his visual impairment did not meet the requirements for statutory blindness as defined by the Social Security Act. The undersigned gives these opinions and that of the claimant's

> treating eye specialist, Dr. Elizabeth Sharpe, great weight as
> such opinions are consistent with the medical evidence in the
> record.

[R. 18–19.]

### Evidence Presented Only to the Appeals Council

On August 12, 2014, *after* the ALJ's decision, Dr. Sharpe wrote a letter to the attorney for Plaintiff to explain that with regard to the April 2014 form about Mr. Grant "someone in my office mistakenly checked B when it clearly should be A. I have made the change and initialed it. I have also attached copies of his latest visual field testing which clearly show that his visual field is no greater than 20 degrees." [R. 355.] Dr. Sharpe also completed a revised form where she initialed the change that Plaintiff met Listing 2.03A (and struck through the check mark for B), and she attached a copy of test results to indicate Plaintiff's visual field testing was no greater than 20 degrees. [R. 355–58.]

It appears that Plaintiff submitted the corrected medical opinion by Dr. Sharpe dated August 12, 2014, and the supporting test result to the Appeals Council. [R. 1–6, 294.]

### *Discussion*

After the ALJ renders a decision, a claimant who has sought review from the Appeals Council may submit evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision. 20 C.F.R. § 404.968; *see also id.* § 404.970(b) (stating that the Appeals Council will consider new and material evidence). In *Meyer v. Astrue*, the Fourth Circuit held that

> the regulatory scheme does not require the Appeals Council to
> do anything more than . . . "consider new and material
> evidence . . . in deciding whether to grant review." *Wilkins* [*v.
> Sec'y, Dep't of Health & Human Servs.*], 953 F.2d [93,] 95 [(4th

Cir. 1991)]; *see also Martinez v. Barnhart*, 444 F.3d 1201, 1207–08 (10th Cir. 2006) (finding "nothing in the statutes or regulations" requires the Appeals Council to articulate its reasoning when "new evidence is submitted and the Appeals Council denies review"); *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992) (rejecting contention that Appeals Council must "make its own finding" and "articulate its own assessment" as to new evidence when denying review); *Damato v. Sullivan*, 945 F.2d 982, 988–89 (7th Cir. 1992) (holding that "the Appeals Council may deny review without articulating its reasoning" even when new and material evidence is submitted to it).

662 F.3d 700, 706 (4th Cir. 2011) (footnote omitted).  However, the Court went on to note,

Although the regulatory scheme does not require the Appeals Council to articulate any findings when it considers new evidence and denies review, we are certainly mindful that "an express analysis of the Appeals Council's determination would [be] helpful for purposes of judicial review."  *Martinez*, 444 F.3d at 1207–08; *see also Damato*, 945 F.2d at 989 n.6 (noting that in "fairness to the party appealing the ALJ's decision, the Appeals Council should articulate its reasoning" when it rejects new material evidence and denies review).

*Id.*

The Fourth Circuit then observed that a lack of additional fact finding by the Appeals Council would not render judicial review impossible if the record contained an adequate explanation of the Commissioner's decision.  *Id.* at 707 (citation omitted).  In such a case, a court could conclude that, even considering the new evidence, the ALJ's decision was supported by substantial evidence.  *See id.* (citation omitted).  On the other hand, if the newly presented evidence was not controverted by other record evidence, the new evidence could support finding that the ALJ's decision was not supported by substantial evidence.  *See id.* (citation omitted).

20

Here, upon review of Dr. Sharpe's letter explaining that 2.03(A) was supposed to have been checked, the corrected and initialed form showing Dr. Sharpe's medical opinion that Plaintiff had contraction of the visual field in the better eye with the widest diameter subtending an angle around the point of fixation no greater than 20 degrees, and the attached test results, it appears that the evidence presented to the Appeals Council was new. The evidence was gathered on August 12, 2014, and the medical opinion stated that Plaintiff satisfied Listing 2.03(A), which was not in the medical record before the ALJ. In other words, the evidence was not cumulative to other evidence before the ALJ. *See id.* at 705. Also, the evidence related back to before the ALJ's June 6, 2014, decision, because the letter explained that Dr. Sharpe meant to check the A box in April of 2014. The evidence was material if there was a reasonable possibility that the new evidence would have changed the outcome, and for the reasons explained below this Court finds that it was material. *Id*.

Apparently, the Commissioner agrees that the evidence presented to the Appeals Council was new and material. The Commissioner contends that the Appeals Council did what it was required to do; it decided to deny the request for review upon consideration of all of the evidence, including the new and material evidence. And, the Commissioner explains the Appeals Council was not required to explain its rationale, and that substantial evidence supports the ALJ's findings. *Id*. at 707.

This Court agrees with the Commissioner that *Meyer* does not require the Appeals Council to articulate how it considered the new and material evidence. However, this Court cannot find that substantial evidence supports the ALJ's decision after Dr. Sharpe changed or added to her medical opinion. The ALJ gave great weight to Dr. Sharpe's medical

opinion of record that Plaintiff met Listing 2.03(B), and the ALJ recognized Dr. Sharpe was Plaintiff's treating eye specialist and an ophthalmologist.  The ALJ emphasized that there was no evidence in the record to show Plaintiff met 2.03(A) or 2.02.  In August of 2014, Dr. Sharpe presented different medical evidence (the latest visual field testing) and her opinion that Plaintiff met Listing 2.03(A), and she stated it related back to April of 2014.  This medical test and the medical opinion was not in the record before the ALJ.  And, the ALJ had clearly stated that she was analyzing whether Plaintiff could satisfy 2.03(A) or 2.02 because the ALJ understood the importance of whether statutory blindness was met.  At the least, the ALJ should be given the opportunity to weigh the new evidence from Dr. Sharpe because it may affect the ALJ's decision.[5]  This Court cannot determine whether the ALJ would have reviewed the additional test results and Dr. Sharpe's corrected opinion and decided that Listing 2.03(A) was met.  It is possible that the ALJ may have changed the decision because it appears there was no other evidence in the record to show whether Plaintiff met Listing 2.03(A), and the Commissioner points to no evidence in the record that controverted Dr. Sharpe's new opinion.

This Court simply cannot determine whether substantial evidence support the ALJ's denial of benefits.  It is appropriate to remand this case so the fact finder can assess the probative value of Dr. Sharpe's new evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (where conflicting evidence "allows reasonable minds to differ as to whether a

---

[5]The Commissioner alleges that Dr. Sharpe's corrected medical opinion is troubling because someone else checked box (B) and because it is well known that treating physicians will often bend over backwards to assist a patient in obtaining benefits.  This seems to attempt to cast doubt on the corrected medical opinion.  The fact finder, and not this Court, should decide what weight to give Dr. Sharpe's corrected medical opinion.

claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case is REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

**IT IS SO RECOMMENDED**.

March 13, 2017                         s/Jacquelyn D. Austin
Greenville, South Carolina        United States Magistrate Judge